1   James M. Finberg (State Bar No. 114850)
    Barry R. Himmelstein (State Bar No. 157736)
2   Michael W. Sobol (State Bar No. 194857)
    Eric B. Fastiff (State Bar No. 182260)
3   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Floor
4   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
5   Facsimile:  (415) 956-1008
    jfinberg@lchb.com
6   bhimmelstein@lchb.com
    msobol@lchb.com
7   efastiff@lchb.com

8   Attorneys for Plaintiffs and the Class

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                      (San Francisco Division)

12

13  BENSON B. ROE, and PAUL GOLTZ, on          Case No.  C 06 3467 MMC
    behalf of themselves and all others
14  similarly situated,                        **CLASS ACTION COMPLAINT FOR
                                               VIOLATIONS OF 18 U.S.C. § 2702(a)(3),
15                  Plaintiffs,                 47 U.S.C. § 605, AND THE CALIFORNIA
                                               UNFAIR COMPETITION LAW**
16  v.

17  AT&T CORP., a New York corporation;        **DEMAND FOR JURY TRIAL**
    AT&T INC., a Delaware corporation; SBC
18  LONG DISTANCE, LLC, a Delaware
    limited liability company dba AT&T Long
19  Distance; PACIFIC BELL TELEPHONE
    COMPANY, a California corporation dba
20  AT&T California; AT&T
    COMMUNICATIONS OF CALIFORNIA,
21  INC., a California Corporation, and DOES
    1-100,
22
                    Defendants.
23

24

25          Plaintiffs, by and through their attorneys, bring this action for damages and

26  equitable relief, on behalf of themselves and all others similarly situated, against the above-named

27  Defendants, demanding a trial by jury, and allege as follows:

28

CLASS ACTION COMPLAINT
CASE NO. _____

**PRELIMINARY STATEMENT**

1.      Without a Court-authorized warrant or subpoena, without any statutorily authorized permission, and without customers' knowledge or consent, defendants have, for over four and one-half years, been secretly providing private customer telephone call records to the federal government.

2.      Federal law prohibits telecommunications companies from revealing their customers' phone call records to any person or entity, including, expressly, the federal government, absent valid legal authorization.  Nonetheless, defendants have opened their telecommunications records to direct access by the National Security Agency ("NSA") of the United States, thereby disclosing customers' private telecommunications records, including those of Plaintiffs and Class Members.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(d), 18 U.S.C. § 2707, and 47 U.S.C. § 605.

4.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside, transact business, are found in, or the claims arise in part, in this District.

**INTRADISTRICT ASSIGNMENT**

5.      Venue is proper within the San Francisco division of this District under Local Rule 3-2(c) as a substantial part of the events or omissions which give rise to the claims herein occurred in San Francisco.

**PARTIES**

6.      Plaintiff Benson B. Roe, M.D. is an individual residing in San Rafael, California.  Dr. Roe is and has been a subscriber and user of Defendants' residential and long distance telephone services.

7.      Plaintiff Paul Goltz is an individual residing in Soulsbyville, California.  Mr. Goltz is and has been a subscriber and user of Defendants' residential and long distance telephone services.

8.      Defendant AT&T Corp. is a New York corporation with its principal place of business in the State of New Jersey.  On or about November 18, 2005, SBC Communications, Inc. ("SBC") acquired AT&T Corp. and AT&T Corp. thereafter became a wholly-owned subsidiary of SBC.

9.      Defendant AT&T Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  AT&T Inc. is the successor in interest to SBC by virtue of a corporate name change.

10.     Defendant SBC Long Distance, LLC is a Delaware limited liability company with its principal place of business in Pleasanton, California.  Since SBC's acquisition of AT&T Corp., SBC Long Distance, LLC has been doing business as AT&T Long Distance.

11.     Defendant Pacific Bell Telephone Company is a California corporation with its principal place of business in San Francisco, California.  Since SBC's acquisition of AT&T Corp., Pacific Bell Telephone Company has been doing business as AT&T California.

12.     Defendant AT&T Communications of California, Inc. is a California corporation with its principal place of business in New Jersey.

13.     DOES 1-100 are subsidiaries of AT&T Inc., or third parties, whose identities are presently unknown to Plaintiffs, but who are responsible in some manner for the violations herein alleged.  Plaintiffs will amend this complaint to allege the names and capacities of these defendants when they have been ascertained.

14.     Defendants AT&T Corp., SBC Long Distance, LLC, Pacific Bell Telephone Company, and AT&T Communications of California, Inc.are "telecommunication carriers" within the meaning of the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.*

15.     At the request of the federal government, Defendant AT&T Inc. exercises control over the other defendants and specifically directed the other defendants to engage in the conduct alleged herein, and is therefore equally liable for the other defendants' conduct and their violations of law.

**FACTUAL ALLEGATIONS**

16.     In Section 222 of the Communications Act of 1934 (47 U.S.C.

§ 222(c)(1)), Congress imposed upon telecommunication carriers, such as Defendants, a duty to

protect sensitive, personal customer information from disclosure.  This information includes data

concerning service customers' telephone calling histories (*i.e.*, date, time, duration, and telephone

numbers of calls placed or received) or call-detail records, and such information constitutes

"individually identifiable customer proprietary network information" within the meaning of

Section 222 of the Communications Act of 1934.

17.     Federal law prohibits the federal government from obtaining customers'

call-detail records without a warrant, subpoena, or other valid legal process, and similarly

prohibits telecommunications providers, such as Defendants, from giving such information to the

government without a court-ordered warrant or other legally sanctioned approval.

18.     On May 11, 2006, in an article entitled "NSA has massive database of

Americans' phone calls," the nationwide newspaper *USA Today* reported that "[t]he National

Security Agency has been secretly collecting the phone call records of tens of millions of

Americans, using data provided by AT&T" and other telecommunication carriers, according to

multiple sources with "direct knowledge of the arrangement."  One of the confidential sources for

the article reported that the NSA's goal is "to create a database of every call ever made" within

the United States.  The confidential sources reported that AT&T and the other carriers are

working "under contract" with the NSA, which launched the program in 2001 shortly after the

September 11, 2001 terrorist attacks.  At the U.S. Senate confirmation hearing on his nomination

to become Director of the Central Intelligence Agency, General Michael Hayden, who was the

Director of the NSA at the time, confirmed that the program was "launched" on October 6, 2001.

19.     The *USA Today* story was confirmed by a U.S. intelligence official familiar

with the program.  The story reports that the NSA requested that AT&T, SBC, and the other

carriers "turn over their 'call-detail records,' a complete listing of the calling histories of their

millions of customers," and provide the NSA with "updates" of the call-detail records.  The

confidential sources for the story reported that the NSA informed the carriers that it was willing

1   to pay for the cooperation, and that both "AT&T, which at the time was headed by C. Michael

2   Armstrong," and "SBC, headed by Ed Whitacre," agreed to provide the NSA with the requested

3   information.

4         20.    The *USA Today* story reported that the NSA requested that Qwest

5   Communications, Inc. ("Qwest"), another telecommunications carrier, provide the NSA with its

6   customers' call-detail records, but Qwest refused.  Qwest requested that the NSA first obtain a

7   court order, a letter of authorization from the U.S. Attorney General's office, or permission from

8   a Court operating under the Foreign Intelligence Surveillance Act ("FISA"), but the NSA refused,

9   because it was concerned that the FISA Court and the Attorney General would find the NSA's

10   request unlawful.  The NSA suggested to Qwest that its failure to cooperate might jeopardize its

11   ability to obtain future government contracts.  The *USA Today* story stated that this version of

12   events was confirmed by an attorney for the former chief executive of Qwest who related that the

13   company had been approached by the NSA, but denied its request for phone records because the

14   request appeared to be unlawful.

15         21.    As of the date of the filing of this complaint, no part of the *USA Today*

16   story has been publicly denied by any representative of the federal government, including the

17   NSA, or by any Defendant.

18         22.    On information and belief, since in or about October 2001, Defendants

19   have provided the "call-detail records" of all or substantially all of their customers, including

20   Plaintiffs, to the NSA, in violation of federal law, as more particularly set forth below.

21         23.    On information and belief, Defendants have, since in or about October

22   2001, been providing to the NSA, "individually identifiable customer proprietary network

23   information" belonging to all or substantially all of their customers, including Plaintiffs, in

24   violation of federal law, as more particularly set forth below.

25         24.    None of the Defendants,  the NSA nor any other government entity has

26   obtained a warrant or court order, or issued a valid administative subpoena, nor has the United

27   States Attorney General or any other governmental official provided any certification of

28   authorization, prior to Defendants providing to the federal government "call detail records" or

1   customer proprietary network information of all or substantially all of their customers, including

2   Plaintiffs.

3                           **TOLLING ALLEGATIONS**

4           25.     Plaintiffs and the Class were ignorant of the violations of law alleged

5   herein, and had no reasonable opportunity to discover those violations, until May 11, 2006, when

6   the article entitled "NSA has massive database of Americans' phone calls" was published in the

7   national newspaper *USA Today*.

8                       **CLASS ACTION ALLEGATIONS**

9           26.     Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on

10  behalf of themselves and a Class, defined as:

11          All individuals and entities located in the United States that have
            been subscribers or customers of Defendants' local and/or long
12          distance wireline telephone services at any time since October 6,
            2001. Excluded from the Class are Defendants, Defendants'
13          predecessors, affiliates, parents, subsidiaries, officers and directors;
            all federal, state, and local governmental entities; any and all judges
14          and justices assigned to hear any aspect of this litigation, their court
            staffs, their spouses, any minor children residing in their
15          households, and any persons within the third degree of relationship
            to any judge or justice assigned to hear any aspect of this litigation.
16
            27.     Plaintiffs also bring this action, pursuant to Rule 23, on behalf of a
17
    California Subclass, defined as:
18
            All individuals and entities located in California that have been
19          subscribers or customers of Defendants' local and/or long distance
            wireline telephone services at any time since October 6, 2001.
20          Excluded from the California Subclass are Defendants, Defendants'
            predecessors, affiliates, parents, subsidiaries, officers and directors;
21          all federal, state, and local governmental entities; any and all judges
            and justices assigned to hear any aspect of this litigation, their court
22          staffs, their spouses, any minor children residing in their
            households, and any persons within the third degree of relationship
23          to any judge or justice assigned to hear any aspect of this litigation.

24          28.     Plaintiffs seek certification of the Class and the California Subclass under

25  Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

26          29.     The Class and California Subclass each number in the millions, so that

27  joinder of all Class and California Subclass members is impractical.

28

537605.2                           - 6 -                    CLASS ACTION COMPLAINT
                                                            CASE NO. _____

1    30.    The claims of Plaintiffs are typical of the claims of the Class and the

2  California Subclass.  Plaintiffs will fairly and adequately protect the interests of the Class and the

3  California Subclass.  Plaintiffs have no conflicts with any other Class or California Subclass

4  member, and have retained competent counsel experienced in class actions, consumer,

5  telecommunications, and civil rights litigation.

6    31.    Common questions of law and fact exist, including:

7        (a)    whether Defendants provided their customers' call-detail records to

8  the NSA;

9        (b)    whether Defendants violated federal law in providing the NSA with

10  their customers' call-detail records;

11        (c)    whether Defendants violated their privacy policies in providing the

12  NSA with their customers' call detail records;

13        (d)    whether Plaintiffs and Class members are entitled to damages; and

14        (e)    whether Plaintiffs and Class embers are entitled to equitable relief.

15  These and other questions of law and fact are common to the Class and the California Subclass

16  and predominate over any questions affecting only individual Class and California Subclass

17  members.

18    32.    A class action is a superior method for the fair and efficient adjudication of

19  the controversy described herein.  A class action provides an efficient and manageable method to

20  enforce the rights of Plaintiffs, the Class and California Subclass members.

21    33.    The prosecution of separate actions by individual members of the Class and

22  California Subclass would create a risk on inconsistent or varying adjudication, establishing

23  incompatible standards of conduct for Defendants.

24    34.    Defendants have acted, and refuse to act, on grounds generally applicable

25  to the Class and California Subclass, thereby making appropriate relief with respect to the Class

26  and California Subclass as a whole.

27

28

CLASS ACTION COMPLAINT
CASE NO. _____

1

**FIRST CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs and the Class)**

2

**Disclosure Of Communications Records In Violation Of 18 U.S.C. § 2702(a)(3)**

3         35.     The allegations of the preceding paragraphs are incorporated by reference

4    as if fully set forth herein.

5         36.     In relevant part, 18 U.S.C. § 2702 provides that:

6         (a)  Prohibitions. – Except as provided in subsection . . . (c) –

7              (3) a provider of . . . electronic communication service to
the public shall not knowingly divulge a record or other information

8         pertaining to a subscriber to or customer of such service (not
including the contents of communications covered by paragraph (1)

9         or (2)) to any governmental entity.

10        37.     Defendants' local and long distance telephone services are "electronic

11   communication service," as that term is defined in 18 U.S.C. § 2510(15), provided to the public,

12   including Plaintiffs and Class members.

13        38.     Defendants knowingly and intentionally divulged records or other

14   information pertaining to Plaintiffs and Class members to the NSA, a governmental entity, in

15   violation of 18 U.S.C. § 2702(a)(3).

16        39.     Plaintiffs and Class members have not consented to Defendants' disclosure

17   to the NSA of records or information pertaining to themselves; nor were such disclosures

18   necessarily incident to the rendition by Defendants of electronic communication service to

19   Plaintiffs and Class members; nor were such disclosures necessarily incident to the protection of

20   the rights or property of Defendants; nor did Defendants believe, in good faith, that an emergency

21   involving danger of death or serious physical injury to any person required such disclosures

22   without delay; nor were such disclosures limited to information relating to any such emergency.

23        40.     Neither the NSA nor any other governmental entity has obtained a warrant

24   authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(A).

25        41.     Neither the NSA nor any other governmental entity has obtained a court

26   order authorizing the disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(B) and (d).

27

28

42. Neither the NSA nor any other governmental entity has issued or obtained an administrative subpoena authorized by a federal or state statute authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

43. Neither the NSA nor any other governmental entity has issued or obtained a federal or state grand jury or trial subpoena authorizing such disclosures, pursuant to 18 U.S.C. § 2703(c)(1)(E) and (c)(2).

44. Defendants have not been provided with a certification in writing by a person specified in 18 U.S.C. § 2518(7) or by the Attorney General of the United States meeting the requirements of 18 U.S.C. § 2511(2)(a)(ii)(B), *i.e.*, a certification that no warrant or court order authorizing the disclosures is required by law, and that all statutory requirements have been met.

45. The disclosures were and are not authorized by any statute or legislation.

46. Defendants' disclosures in violation of 18 U.S.C. § 2702(a)(3) were and are knowing, intentional, and wiillful.

47. Defendants are now divulging and will continue to divulge protected telecommunications records of Plaintiffs and Class members, presenting a credible threat of immediate future harm.

48. Plaintiffs and Class members have been and are aggrieved by Defendants' above described divulgence of records or other information pertaining to Plaintiffs and Class members.

49. Pursuant to 18 U.S.C. § 2707(b) and (c), Plaintiffs and Class members seek: (a) a declaration that the disclosures are in violation of 18 U.S.C. § 2702(a)(3); (b) a preliminary injunction restraining Defendants from continuing to make such unlawful disclosures; (c) a permanent injunction restraining Defendants from continuing to make such unlawful disclosures; (d) statutory damages of $1000 for each Plaintiff and each Class member; (e) punitive damages; and (f) reasonable attorneys' fees and reasonable costs of this litigation.

**SECOND CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs and the Class)**
**Unauthorized Disclosure of Communications Data in Violation of 47 U.S.C. § 605**

50.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

51.     In relevant part, 47 U.S.C. § 605 provides that:

(a) Practices prohibited –

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence . . . thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

52.     Defendants received, assisted in receiving, transmitted, or assisted in transmitting, Plaintiffs' and Class members' interstate communications by wire.

53.     By the acts alleged herein, Defendants divulged or published the "existence" of Plaintiffs' and Class members' communications to the NSA, by means other than through authorized channels of transmission or reception, in violation of 47 U.S.C. § 605.

54.     Defendants' disclosure and publication of the existence of Plaintiffs' and Class members' communications was not authorized by any provision of 18 U.S.C. §§ 2510-2522.

55.     Defendants' disclosure and publication of the existence of Plaintiffs' and Class members' communications was willful and for purposes of direct or indirect commercial advantage or private financial gain, as they were paid for their cooperation, and a failure to cooperate might have jeopardized their ability to obtain lucrative government contracts.

56.     Defendants failed to notify Plaintiffs or Class members of the Defendants' disclosure and/or publication of the existence of Plaintiffs' and Class members' communications, nor did Plaintiffs or Class members consent to such disclosure and publication.

57.     Pursuant to 47 U.S.C. § 605(e)(3), Plaintiffs and Class members seek:   (a) a declaration that the disclosures are in violation of 47 U.S.C. § 605(a); (b) a preliminary injunction restraining Defendants from continuing to make such unlawful disclosures; (c) a permanent injunction restraining Defendants from continuing to make such unlawful disclosures; (d) statutory damages of not less than $1,000 or more than $10,000 for each violation, plus, in the Court's discretion, an increase in the statutory damages of up to $100,000 for each violation; and (e) reasonable attorneys' fees and reasonable costs of this litigation.

**THIRD CLAIM FOR RELIEF**
**(On Behalf of Plaintiffs and the California Subclass)**
**Unlawful and Unfair Business Practices in Violation of the**
**Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.***

58.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

59.     By engaging in the acts and practices described herein, Defendants have engaged in unlawful and unfair business practices in violation of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*

60.     Defendants' acts and practices are unlawful because, as described above, they violate 47 U.S.C. § 222, 18 U.S.C. § 2702(a)(3), and 47 U.S.C. § 605.

61.     Defendants' acts and practices are also unlawful because they violate 18 U.S.C. § 3121.  In relevant part, 18 U.S.C. § 3121 provides that:

> (a) In general. – Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title or under the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.).

As defined by 18 U.S.C. § 3127:

> (3) the term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or

- 11 -

any device or process used by a provider or customer of a wire
communication service for cost accounting or other like purposes in
the ordinary course of its business;

(4) the term "trap and trace device" means a device or process
which captures the incoming electronic or other impulses which
identify the originating number or other dialing, routing,
addressing, and signaling information reasonably likely to identify
the source of a wire or electronic communication, provided,
however, that such information shall not include the contents of any
communication . . . .

62.     On information and belief, Defendants have installed or used pen registers
and/or trap and trace devices without first obtaining a valid court order under 18 U.S.C. § 3123 or
a subpoena.

63.     The pen registers and/or trap and trace devices installed and used by
Defendants have captured, recorded, or decoded, and continue to capture, record or decode,
dialing, routing, addressing or signaling information pertaining to Plaintiffs and/or California
Subclass members' wireline telephone communications.

64.     Defendants did not notify Plaintiffs or California Subclass members of the
installation or use of pen registers and/or trap and trace devices.  Plaintiffs and California
Subclass members have not consented to Defendants' installation or use of pen registers and/or
trap and trace devices.

65.     Defendants are telecommunications carriers that obtain and have obtained
customer proprietary network information by virtue of their provision of telecommunications
service.

66.     Defendants used, disclosed and/or provided to the NSA, a government
entity, individually identifiable customer proprietary network information pertaining to Plaintiffs
and California Subclass members.

67.     Defendants failed to notify Plaintiffs or California Subclass members of the
disclosure and/or provision of their personally identifiable customer proprietary network
information to the NSA, nor did Plaintiffs or California Subclass members consent to such.

68.     Defemdants' acts and practices also constitute unfair business practices in violation of of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*, because they contravene Defendants' privacy policy, which assures Plaintiffs and California Subclass members that information pertaining to their telephone calls will not be disclosed to third parties absent a valid court order or subpoena.

69.     Defendants maintain a privacy policy issued together with the service agreements with their customers.  Defendants acknowledge in their privacy policy statement that they "Maintain Customer Proprietary Network Information" and represent that they "will keep [such] personal information secure and confidential."  (http://att.sbc.com/gen/privacy-policy?pid=2506)

70.     In a section in one version of Defendants' privacy policy, entitled "Information we disclose with third parties," the policy states:

> We must disclose information, when requested, to comply with
> court orders or subpoenas. We will also share information when
> necessary to prevent unlawful use of communications services,
> when necessary to repair network outages, and when a customer
> dials 911 and information regarding their location is transmitted to
> a public safety agency.
> (http://att.sbc.com/gen/privacy-policy?pid=2506)

71.     In violation of this policy and in breach of their trust with Plaintiffs and Class members, including the California Subclass Members, Defendants disclosed the customer proprietary network information belonging to Plaintiffs and the California Subclass, *i.e.*, their call-detail records, to the NSA without a court order or subpoena.

72.     Plaintiffs and the California Subclass seek restitution, injunctive relief, and all other relief available under §§ 17200, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and for all others similarly situated, respectfully request that the Court:

A.     Declare that Defendants' conduct as alleged herein violates applicable law;

B.     Award statutory damages to Plaintiffs and the Class;

C.     Award punitive damages to Plaintiffs and the Class;

1   D.  Award Plaintiffs' reasonable attorneys' fees and costs of suit;

2   E.  Award restitution and all other relief allowed under §§ 17200, *et seq.* to Plaintiffs

3 and the California Subclass;

4   F.  Enjoin Defendants' continuing violations of applicable law; and

5   G.  Grant such other and further relief as the Court deems just and proper.

6         **JURY DEMAND**

7   Plaintiffs hereby request a jury trial on all issues so triable.

Dated: May 30, 2006   By:   Barry R. Himmelstein
            Barry R. Himmelstein (State Bar No. 157736)

James M. Finberg (State Bar No. 114850)
Barry R. Himmelstein (State Bar No. 157736)
Michael W. Sobol (State Bar No. 194857)
Eric B. Fastiff (State Bar No. 182260)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Attorneys for Individual and Representative Plaintiffs Benson B. Roe and Paul Goltz

CLASS ACTION COMPLAINT
CASE NO. _____